LAMBERT v. STATE.

(In Banc. April 8, 1946.)

[25 So. (2d) 477. No. 36098.]

Earle L. Wingo, of Hattiesburg, for appellant.

Greek L. Rice, Attorney General, by R. O. Arrington, Assistant Attorney General, for appellee.

**Roberds, J.,** delivered the opinion of the court.

Lambert was convicted of robbery, sentenced to three years in the state penitentiary, and he appeals.

He did not testify. The district attorney, in his closing argument to the jury, said: ''Where is the testimony that he did not do it? . . . There's no denial.'' Counsel for Lambert immediately objected to this argument and moved the court for a mistrial, which the court overruled. Lambert contends that this was a comment by the district attorney upon his failure to testify in his own behalf and was a violation of Section 1691, Code 1942, which reads: ''The accused shall be a competent witness for himself in any prosecution for crime against him; but the failure of the accused, in any case, to testify shall not operate to his prejudice or be commented on by counsel.''

The following Mississippi cases were reversed and remanded under this statute for remarks made by the State's attorney: Yarbrough v. State, 70 Miss. 593, 12 So.

551; Reddick v. State, 72 Miss. 1008, 16 So. 490; Sanders v. State, 73 Miss. 444, 18 So. 541; Hoff v. State, 83 Miss. 488, 35 So. 950; Smith v. State, 87 Miss. 627, 40 So. 229; Prince v. State, 93 Miss. 263, 46 So. 537; Harris v. State, 96 Miss. 379, 50 So. 626; Gurley v. State, 101 Miss. 190, 57 So. 565; Harwell v. State, 129 Miss. 858, 93 So. 366; Winchester v. State, 163 Miss. 462, 142 So. 454.

Some of the statements made in the foregoing cases were clearly comments upon the failure of defendants to testify, so that we will discuss only those of doubtful meaning and application and which are most similar to the remarks made in the case at bar.

In the Reddick case, counsel or the state, referring to an alleged admission made by the accused to one Swayzee, said: "And he has not denied it." When counsel for defendant suggested the impropriety of this comment, state's counsel corrected himself and then said: "It has not been denied." The trial judge instructed the jury to disregard the remarks. The state's attorney testified on motion for new trial that it was not his intention to refer to the fact that the defendant had not testified. However, this Court said that the intention of the attorney is immaterial; that the test is whether the language can be reasonably construed to be a comment upon the failure of defendant to take the stand. The case was reversed and remanded.

In the Sanders case, the comment was "There was enough in this evidence to make it incumbent on the defendant to deny it, and he has not done so." On objection to this, the court reminded counsel he could not refer to the fact that the defendant had not testified and told the jury to disregard the remarks; whereupon counsel for the State said: "Well, then, consider that not said." This Court held that the error was not cured and reversed the case.

In Hoff v. State, the prosecuting attorney, holding in his hand a letter introduced as having been written by the defendant to the woman he was charged with having

seduced, said "Nobody on earth denies that he wrote it. . . . No living soul has denied that defendant seduced this little girl." The case was reversed for those remarks.

In Smith v. State [87 Miss. 627, 40 So. 230], four persons were present on the occasion of the homicide, the defendant, the deceased, and two state witnesses. The district attorney said: "No one had denied that he . . . killed Buchanan." "No one has denied that the witness Hobson was sober." This Court, speaking through Judge Truly, said those remarks could "only be reasonably construed as comments upon the failure of the defendant to testify in his own behalf," since the only eyewitnesses other than defendant had been introduced by the state; that these comments necessarily directed the attention of the jury to the fact that the defendant had not testified. The Court said further: "As long as the law stands as now written, it prohibits any comment upon the failure of the defendant to testify. And this is true without regard to the character of the comment, or the motive or intent with which it is made."

In the Prince case, the district attorney said: "Gentleman of the jury, he confessed the killing of McAllister to Will Jones, and that confession stands uncontradicted before you to-day." The court sustained the objection to this statement "if counsel had reference to defendant's failure to go on the stand." The district attorney replied that he had no intention of referring to that, whereupon the Judge instructed the jury not to consider the remarks. However, this Court felt compelled to reverse the case, Judge Whitfield saying: "This Court has several times, in the most positive and emphatic way, held that any sort of reference, of any character whatever, to the failure of a defendant to testify, constitutes reversible error."

The Gurley case involved a shooting affray between Dr. Davis and Gurley. Each shot the other and Dr. Davis died and Gurley was charged with his murder. Deendant's counsel in his argument had said that if the de-

fendant had died instead of Dr. Davis that Dr. Davis would have been charged with murder of the defendant. The district attorney, replying to that argument, said [101 Miss. 190, 57 So. 566]: "If that was true, he would have put Blankenship and other witnesses up, and Dr. Davis would have mounted the stand and told how that occurred." This Court said: "No ingenuity, however artful, no subtlety, however refined, can escape the conclusion that this statement made by the prosecuting counsel held up to the jury the failure of the defendant to testify. . . . If the other man, Dr. Davis, were on trial, he would be more frank, and not be afraid of a full disclosure; but this defendant was afraid of a full disclosure, and hence dared not testify." The Court quoted from the Yarbrough case, supra, wherein the Court said: "The word 'comment,' as employed in the statute, does not mean to criticise or condemn or anathematize the accused for his failure to testify. It forbids, in unmistakable language, any comment, friendly or unfriendly. It forbids any remarks, of any character, in any words, upon the failure of the accused to testify. The attention of the jury is not to be called to the fact at all by counsel. . . ."

In Winchester v. State, 163 Miss. 462, 142 So. 454, 456, the district attorney said: "What defense has been shown here? There is no denial that he killed her. . . . Not a single soul has said she was not shot as this Darden woman has told you." This Court observed that since appellant and the state's witness, Leona Darden, were the only eye-witnesses to the killing, the language of the state's attorney "could have meant nothing less than a comment on appellant's failure to testify . . ."

In the following cases this Court declined to reverse because of remarks of the state's attorney: Drane v. State, 92 Miss. 180, 45 So. 149; Johnson v. State, 109 Miss. 622, 68 So. 917; House v. State, 121 Miss. 436, 83 So. 611; Winters v. State, 142 Miss. 71, 107 So. 281; Baird v. State,

146 Miss. 547, 112 So. 705; Guest v. State, 158 Miss. 588, 130 So. 908; Hanna v. State, 168 Miss. 352, 151 So. 370; Heard v. State, 177 Miss. 661, 171 So. 775; Fry v. State, 194 Miss. 603, 13 So. (2d) 621; Easterling v. State, 197 Miss. 381, 20 So. (2d) 840.

In the Drane case, appellant and Burns were indicted for murder. One Latham detailed a conversation he overheard between Burns and appellant. The district attorney said no one had denied on the witness stand what Latham had said. The court remarked that Burns might have been produced as a witness by the defendant.

In the Johnson case, one of the attorneys representing the state said: "the testimony for the state was uncontradicted." The Court said it was a fact that the evidence of the state was uncontradicted and this statement was not a reference to the failure of defendant to testify. The opinion does not disclose whether there were available eye-witnesses other than defendant who did not testify. Also, two distinctions may be noted between that statement and the one at bar. First, "the testimony for the state" includes all matters on which the state introduces evidence, whereas the statement "Where is the testimony that he did not do it?" refers to one specific thing, the robbery. Second, "uncontradicted" would include all evidence of a contradictory nature, even circumstantial evidence, whereas, "There's no denial" conveys the meaning of personal denial on the stand.

In House v. State, the statement was "There are no eyewitnesses in this case, but Diamond House is responsible for that. There are two people living now who know how this happened. One of them came and told you." The Court did not say whether this was a comment on the failure of defendant to testify. It assumed, however, for purpose of the decision that it was such comment and then said "nevertheless we cannot reverse therefor for the reason that the appellant could not have been prejudiced thereby. His guilt is manifest from the evidence,

and the jury could not, under their oaths, have arrived at any verdict other than one of guilt."

In the Winters case [142 Miss. 71, 107 So. 282], the county prosecuting attorney, in speaking of the still in question, said: "Then whose was it? It was up to them to show whose it was in his house." This Court said: "This excerpt from the county attorney's remarks is so meager that it is impossible to say therefrom that it was aimed at the appellant's failure to testify. The use of the pronoun 'them' indicates that he was not referring solely to the appellant, and, in so far as the excerpt discloses, he may not have intended to refer to him at all." Apparently, there might have been witnesses other than the defendant who knew about the possession of the still.

In the Baird case, the attorney said the fact of the murder "is undisputed"; in the Hanna case [168 Miss. 352, 151 So. 371], "The testimony for the state stands out here uncontradicted and undenied"; in the Fry case the Court said the state's attorney "commented on the failure of the appellant to testify in the case," but in each and all of them, according to the opinions of this Court, the guilt of defendants was manifest and had been shown beyond all reasonable doubt, so that such remarks were harmless in those cases. In the Heard and Easterling cases, the subject of the comment was not peculiarly within the knowledge of the accused, and other witnesses might have testified about it.

Thus, it is seen that in every case, except perhaps the Johnson case, this Court has reversed for comments of the character here under consideration, unless (1) there was an eye-witness other than defendant available to the accused and who was not placed upon the stand by him, or (2) the guilt of defendant was so manifest that no fair jury could have returned a verdict other than guilty.

The case at bar does not come within either of the stated exceptions. As to the first, appellant and three other parties, Sheppard, Smith and Miss Reba Mitchell, were indicted for robbing one Nix. Sheppard, Smith and

Mitchell entered pleas of guilty and those pleas were standing when appellant was being tried, but the parties had not been sentenced. The state introduced Sheppard and Mitchell against Lambert. Smith was not used as a witness by either side. The proof shows that all of these parties, together with Nix, were riding in a truck being driven by Lambert. Sheppard and Mitchell both testified that Smith rifled Nix's pockets and took from him $45 in money while Sheppard held over Nix a knife, which Nix thought was a pistol. It is not claimed that Lambert actually took any part in the robbery. The claim is that Lambert planned it with Sheppard. Sheppard testified to that. The entire case against Lambert rests upon the testimony of Sheppard that he and Lambert had previously planned the robbery. It is not shown that Smith was in position to say whether that was true. After the case against Lambert was tried, the court sentenced the other three parties to one year each in the state penitentiary. Under these circumstances, it cannot be said that the district attorney, when he made the statement under consideration, had reference to the failure of Lambert to place Smith upon the stand to deny that Lambert had any part in the robbery, first, because Smith was in no position to deny or affirm the asserted arrangement with Sheppard, and, second, because, had Smith been in position to deny the arrangement it would be too much to expect Lambert to put him on the stand as Lambert's witness when Smith was awaiting sentence under a plea of guilty, and, of course, hoping for light punishment. Naturally, Smith would have been very reluctant to testify for Lambert, thereby antagonizing the district attorney, who, he no doubt reasoned, might influence the extent of his own punishment. The comment of the district attorney, under the circumstances here, could have no other meaning than a reference to the failure of the accused to take the stand and deny that he had planned this robbery with Sheppard. That was the natural inference and the jury no doubt so understood it.

Nor can it be said that the guilt of Lambert is manifest, and, therefore, within the second stated exception. His guilt is based alone on the testimony of a confessed accomplice, which is, of course, viewed with caution. On the other hand, there are circumstances connected with the actual robbery and immediately subsequent thereto, not necessary for us to detail, which strongly tend to show that Lambert was not a party to this crime. In addition, it was shown without contradiction that the general reputation of Lambert for peace or violence and as a law abiding citizen was good and that of Sheppard was bad. While the guilt or innocence of Lambert under the evidence here was a question for the jury, it certainly cannot be said that his guilt is manifest, or that the state has shown that fact by overwhelming testimony.

Therefore, we conclude that the quoted remarks of the district attorney, under the facts of this case, could have no meaning other than a reference to the failure of Lambert to testify in his own behalf, and that, tested by the adjudicated cases, as shown above, such remarks constitute reversible error.

The writer, speaking for himself alone, while appreciating the laudable objects of the statute, thinks the Court has gone too far in reversing cases for comments of the character under consideration. He is of opinion the statute should not operate when counsel for the state goes no further than to call attention to the simple fact that the defendant has not taken the stand, which fact the jurors already know, and from which they, as men of ordinary sense, may naturally infer that defendant thinks it is best for his cause that he not testify and subject himself to cross-examination. But, it is clear that unless the cases which hold otherwise, as set out above, are overruled, they are binding upon us and call for a reversal of this case.

Reversed and remanded.

DISSENTING OPINION.

**Smith, C. J.,** delivered a dissenting opinion.

The judgment of the court, below should be affirmed. The review of the cases by Judge ROBERDS bearing hereon discloses that this Court is about to so construe this statute, if it has not already done so, that it will be almost impossible for a prosecuting attorney to safely argue a criminal case to the jury when the defendant therein fails to testify.