### SMITH *v.* STATE

No. 42238 October 15, 1962 145 So. 2d 466

592

*Clay B. Tucker,* Woodville, for appellant.

*G. Garland Lyell, Jr., Asst. Atty. Gen.,* Jackson, for appellee.

McElroy, J.

. This is an appeal from the Circuit Court of Wilkinson County, Mississippi, from a conviction on a charge of grand larceny of a red "devron" heifer calf of the value of $65, the property of James Rock Carter. Appellant, Zane Smith, was sentenced to a term of three years in the state penitentiary.

James Rock Carter had a small herd of cattle, including the heifer in question, which weighed about 250 pounds. Zane Smith and one Woodrow Burgess killed the heifer with a 22-calibre rifle, and carried the carcass to a point several miles away on Mile Hill, partly dressed the calf, leaving the entrails and head near the public road. The head was discovered early the next morning, and a search was instituted to determine the owner of the calf. On the night prior to the morning of the discovery of the head, a man and his daughter happened by the scene of the dressing of the calf and

as they approached the scene, a truck flashed its lights from dim to bright and moved a short way along the shoulder of the road, but in spite of the bright lights, the daughter noted a General Electric insignia on the side of the truck. The investigation which began the following morning immediately pointed to appellant, who operated a television repair service across the state line in St. Francisville, Louisiana. With the co-operation of a Sheriff in Louisiana, it was found that appellant and his companion Burgess (See Burgess v. State, No. 42,237, decided by this Court October 8, 1962) had admittedly shot the calf and brought it to St. Francisville where it was butchered, skinned and the meat put in a deep freeze. Smith admitted having killed and butchered the calf, but told various stories to the investigating officer as to the circumstances. The first story was that he obtained the calf in a trade involving a television set; then claimed that the calf was accidentally run into by the truck, its leg broken, and it was necessary to shoot it, and then they sought out and found the owner and tried to reimburse him or get him another calf of equal or larger size. He was arrested and waived extradition, and some days later made bond. The sheriff asked him if he were willing to go to Jackson and take a test. He stated that he first wanted to see a lawyer, then he called a sheriff over the telephone and voluntarily agreed to a polygraph test in Jackson. The usual polygraph test was made in the City of Jackson in the Highway Patrol Office by one Sam Ivy, the machine operator. Testimony was to the effect that the polygraph test was made in the usual way of most tests of this nature, in that he was advised of his constitutional rights, that no promises were made, no fear produced one way or the other, no force was used, and the court held that the confession was free and voluntary.

Appellant argued that the confession was involuntary because of the fear produced in him by the manner of

use of the machine. There was no force or compulsion used, and further the appellant voluntarily telephoned the sheriff after talking to his attorney and said that he was willing to go to Jackson and have the test made. He met Sheriff McGraw at an appointed time and accompanied him to Jackson. From the evidence we cannot say that appellant was or was not afraid, but if he were afraid, it was not fear of the machine but of its capacity to elicit the truth. This fear may have been caused by the consequences of truth and a guilty conscience. The State did not bring out any of the references to the polygraph machine during the preliminary examination on the admissibility of the confession. Pinter v. State, 203 Miss. 344, 34 So. 2d 723; Stokes v. State, 240 Miss. 453, 128 So. 2d 341; Simmons v. State, 241 Miss. 481, 130 So. 2d 860; Smith v. State, 139 So. 2d 857 (Miss.).

Appellant assigns as error remarks of a special prosecutor in his argument to the jury on failure of appellant to testify as shown by a special bill of exceptions. It is contended in a special bill of exceptions that Richard T. Watson, one of the special prosecutors, in a statement to the jury, said "that this man said he was a confessed thief." Objection was based on the fact that appellant did not take the stand and testify. Does this remark constitute an unwarranted comment on the failure of the defendant to testify? The full text of Mr. Watson's remarks is not given in the special bill of exceptions, and the above-quoted was only a phrase or clause taken from his remarks to the jury. The evidence in the case is that the confession was made to the sheriff that he and Burgess went to the place, killed the calf and butchered it. The sheriff testified that he made this confession of theft or larceny of the heifer described. Since the defendant did not testify, the remark could only mean that the sheriff said that appellant was a confessed thief. There is no dispute in this

case about the facts and as to who committed the crime. Bramlett v. State, 37 So. 2d 305 (Miss.). Cf. Lambert v. State, 199 Miss. 790, 25 So. 2d 477; Drane v. State, 92 Miss. 180, 45 So. 149. We hold that the remarks of the special prosecutor were certainly not reversible error.

Appellant contends that the refusal of his request for a peremptory instruction was error. The evidence in this case is uncontradicted that appellant and Burgess shot and killed the calf, drove several miles away to dress it, took it to St. Francisville, Louisiana, to complete the job, butchered it and stored the meat. ▮▮ We think that the only question for the jury to decide was whether or not appellant had first run into the calf with the truck and had shot the calf as an act of mercy, or was larceny. He made a confession that the calf was stolen, which confession was shown to have been freely and voluntarily made. The jury was therefore justified in finding defendant guilty of larceny. We are of the opinion, and so hold, that the record in this case is unusually free from error, and the verdict of the jury and the judgment of the trial court is therefore affirmed.

Affirmed.

*McGehee, C. J.,* and *Kyle, Gillespie* and *Jones, JJ.,* concur.